IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MOXIE JAVA INTERNATIONAL, LLC, an Idaho Limited Liability Company, | ) ) ) | Case No.  CV-07-535-S-BLW |
| | ) | **MEMORANDUM DECISION** |
| Plaintiff, | ) | **AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| CORNUCOPIA BEVERAGES, INC., a New Hampshire Corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**INTRODUCTION**

The Court has before it Defendant's Motion to Dismiss for Lack of

Personal Jurisdiction (Docket No. 14).  The Court heard oral argument on the

motion on December 16, 2008, and now issues the following decision.

**BACKGROUND**

Plaintiff Moxie Java International, LLC ("Moxie Java") operates and

franchises coffee shops under the brand name "MOXIE JAVA."  Moxie Java's

principal place of business is Garden City, Idaho, and it has approximately

seventy-five different locations in several states, including Idaho.  Defendant

Cornucopia Beverages, Inc. ("Cornucopia") is a subsidiary of the Coca-Cola

Bottling Company of Northern New England Inc. and distributes soft drink beverages in the northeastern United States.

At one time, Moxie Java was involved in a trademark dispute with a Massachusetts corporation called The Monarch Company Inc. ("Monarch"). (Compl. Ex. A (1997 Agreement.)  Monarch owned the trademark "MOXIE" for a "non-alcoholic maltless carbonated beverage and syrup for making the same." (Id.)  In 1997, Moxie Java and Monarch resolved their dispute by entering into a contract (the "1997 Agreement").

The 1997 Agreement provided that Moxie Java would have the right "to use and register the marks MOXIE JAVA for retail food store services, as well as for coffee and beverages with coffee base."  (Id.)  Moxie Java would not, however, "use MOXIE by itself or in combination with any other term to identify any kind of prepared beverage in a pre-packaged or pre-sealed container."  (Id.)  The 1997 Agreement also provided that Monarch "[would] not object to the use and registration of MOXIE-formative marks by [Moxie Java] which [were] in compliance" with the terms of the 1997 Agreement.  (Id.)  The 1997 Agreement contained a choice-of-law provision stating that Idaho law would govern its terms, and it also provided that the contract was freely assignable.  (Id.)

In 2007, Cornucopia purchased certain trademarks and assets from Monarch,

**Memorandum Decision and Order – 2**

including the "MOXIE" trademark.  In doing so, Cornucopia became an assignee of the 1997 Agreement.  (Compl. Ex. F ("Demand Letter") pp. 1-2.)  On June 13, 2007, Cornucopia initiated Opposition Proceedings in the U.S. Patent and Trademark Office challenging several federal trademark applications that Moxie Java had submitted.  Moxie Java's applications sought to register the trademarks "MOXICCINO," "MOXIBERRY," and "MOXIE MATÉ."  Cornucopia also sent Moxie Java a letter asserting that Moxie Java's use of these marks constituted trademark infringement and unfair competition under the Lanham Act and related state laws, as well as a breach of contract.  (Id. p. 2.)  The letter requested that Moxie Java "withdraw and/or abandon its applications for registration of the MOXIBERRY, MOXICCINO, and MOXIE MAT[É] marks."  (Id.)

On December 18, 2007, Moxie Java filed its Complaint in this Court alleging that Cornucopia breached the 1997 Agreement and seeking a declaratory judgment of trademark non-infringement.  Presently before the court is Cornucopia's motion to dismiss for lack of personal jurisdiction.

## ANALYSIS

## I.    Standard of Review and Applicable Legal Standards

In the context of Cornucopia's motion to dismiss under Fed. R. Civ. P. 12(b)(2), Moxie Java bears the burden of proving that jurisdiction is appropriate.

**Memorandum Decision and Order – 3**

*Boschetto v. Hansing*, 539 F.3d 1011. 1015 (9th Cir. 2008); *see also*

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 1990).

Where, as here, the motion is based on written materials rather than an evidentiary

hearing, Moxie Java need only establish a *prima facie* showing of jurisdictional

facts to withstand the motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495 (9th Cir.

1995). In addressing the motion to dismiss for lack of personal jurisdiction, the

Court must take Moxie Java's uncontroverted allegations in the complaint as true

and resolve factual disputes in affidavits in its favor. *Dole Food Co., Inc. v. Watts*,

303 F.3d 1104, 1108 (9th Cir. 2002). However, where Cornucopia offers evidence

in support of its motion, Moxie Java may not simply rest on the bare allegations of

its complaint. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th

Cir. 1977). Instead, Moxie Java must come forward with facts, by affidavit or

otherwise, in response to Cornucopia's version of the facts. *Id.*

Where there is no applicable federal statute governing personal jurisdiction,

such as in the instant case, the law of the state in which the district court sits

applies. *Schwarzenegger*, 374 F.3d at 800. Because Idaho's long-arm statute,

codified at Idaho Code § 5-514, allows a broader application of personal

jurisdiction than the Due Process Clause, the Court need look only to the Due

**Memorandum Decision and Order – 4**

Process Clause to determine personal jurisdiction.[1]  Thus, under Idaho law, the

jurisdictional analysis and federal due process analysis are one and the same.

The exercise of personal jurisdiction over a defendant comports with federal

due process only if the defendant "has certain minimum contacts with the relevant

forum such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice."  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et

L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting *Int'l Shoe

Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).

In turn, sufficient minimum contacts can give rise to general jurisdiction or specific

jurisdiction.  *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).  General

jurisdiction applies if the defendant's activities in the forum "are substantial,

---

[1] In *Lake v. Lake*, 817 F.2d 1416, 1420 (9th cir. 1987), the 9th Circuit determined that the Idaho legislature, in adopting I.C. § 5-514, "intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution." *Lake*, 817 F.2d at 1420. The Idaho Supreme Court had so held, and continued to so hold for a few years after the *Lake* decision was rendered.  *Houghland Farms v. Johnson*, 803 P.2d 978 (Idaho 1990). More recently, however, the Idaho Supreme Court has, without commenting on this precedent, instituted a two-part test for resolving long-arm jurisdiction questions. The Court first looks at whether the defendant's conduct falls within the terms of the statute, and then looks to see whether exercising jurisdiction would comport with the Due Process Clause. In two cases, the Idaho Supreme Court has held that the defendant's conduct did fall within I.C. § 5-514, but that jurisdiction could not be exercised consistently with the Due Process Clause. *See e.g., Smalley v. Kaiser*, 950 P.2d 1248 (Idaho 1997); *Saint Alphonsus v. State of Washington*, 852 P.2d 491 (Idaho 1993). These decisions imply that I.C. § 5-514 reaches beyond the limits of due process, and that the Idaho Supreme Court must use the Due Process Clause to rein in the statute's grasp. Thus, the interpretation of I.C. § 5-514 in *Lake* appears no longer accurate. The result, however, is the same – the Due Process Clause sets the limit, but the Idaho Supreme Court's new two-part test recognizes that the reach of the statute is not identical with the reach of the Due Process Clause.

**Memorandum Decision and Order – 5**

continuous and systematic," whereas specific jurisdiction applies if a defendant's "less substantial contacts with the forum give rise to the cause of action before the court." *Id.*

## II.    Cornucopia's Motion to Dismiss

In this case, Moxie Java submits that only specific jurisdiction is appropriate.  Accordingly, the Court will focus its discussion on specific jurisdiction, and not address general jurisdiction.  The Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc., 433 F.3d at 1205-06* (quoting *Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)*).  The plaintiff bears the burden of satisfying the first two prongs of the test.  *Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007)*.  If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "'present a compelling case' that the

**Memorandum Decision and Order – 6**

exercise of jurisdiction would not be reasonable." *Id.* (quoting *Schwarzenegger, 374 F.3d at 802*).

###### A.      Purposeful Availment

The first prong of the specific-jurisdiction test includes both purposeful direction and purposeful availment.  Purposeful direction generally applies to tort cases, in which a court applies an effects test focusing on the forum where the defendant's actions were felt, whether or not the actions themselves occurred within that forum.  *Id.* at 1206 (citing *Schwarzenegger, 374 F.3d at 803*).  In contrast, purposeful availment typically applies to contract cases, in which a court examines whether a defendant "'purposefully avails itself of the privilege of conducting activities' or 'consummate[s][a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Id.* (quoting *Schwarzenegger, 374 F.3d at 802*) (alterations in original).  The parties agree that this case primarily involves a contract and therefore a purposeful-availment analysis is appropriate.

A contract between a resident of the forum state and a non-resident does not automatically establish purposeful availment.  *Unocal Corp., 248 F.3d at 924* (citing *McGlinchy v. Shell Chem. Co., 845 F.2d 802, 816 n.9 (9th Cir. 1988)*).  Rather, prior negotiations, contemplated future consequences, the terms of the

**Memorandum Decision and Order – 7**

contract, and the parties actual course of dealing must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum. *Burger King*, 471 U.S. at 479. This evaluation ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of unilateral activity of the other party or a third person. *Unocal Corp.*, 248 F.3d at 924.

In this case, Cornucopia, as an assignee of the 1997 Agreement, did not participate in the contract's negotiation. Nonetheless, a lack of contacts with the forum state during contract negotiation is not dispositive. *See, e.g., Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (finding that defendant was subject to personal jurisdiction in Montana where contract negotiations took place in Nebraska, but contract expressly required that plaintiff deliver product in Montana). Further, although Cornucopia did not craft the terms of the contract, Cornucopia voluntarily elected to become a party to it; therefore, if sufficient contacts arise from "the terms of the contract and the parties' actual course of dealing," Cornucopia cannot claim that these contacts are "random" or "fortuitous" or result from the "unilateral activity of another party." *Burger King*, 471 U.S. at 480.

Cornucopia stresses that it is not a corporate successor; rather it is an

**Memorandum Decision and Order – 8**

assignee of the 1997 Agreement.  Citing *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003), Cornucopia notes that "[a]n assignee does not step automatically into the shoes of the assignor for purposes of personal jurisdiction." *Purdue Research*, 338 F.3d at 784.  In *Purdue Research*, the Seventh Circuit explained that "[g]iven the Supreme Court's need for an individual assessment of a particular defendant's contacts with the forum state, the distinction between a corporate successor and an assignee of a contract is a sound one." *Id.*  A corporate successor chooses "to stand in the shoes of its predecessor and has chosen to accept the business expectations of those who have dealt previously with that predecessor", while an assignee only "purchases certain specific contractual rights and assumes certain specific obligations." *Id.*  Thus, a corporate successor should "expect[] to be haled into the same courts as its predecessor", but because due process requires that each defendant's contacts with the forum state be assessed individually, "a general rule that imputes the assignor's forum contacts to the assignee would, at least in some cases, violate the established norms of due process." *Id.*

Although this Court agrees that a general rule that imputes an assignor's forum contacts to the assignee would violated due process, the Court finds that an individual assessment of Cornucopia's contacts with Idaho nevertheless fulfills the

**Memorandum Decision and Order – 9**

purposeful availment prong of the specific jurisdiction test in this case.  The 1997

Agreement states that Moxie Java is an Idaho corporation.  (1997 Agreement.)

Further, the terms of the 1997 Agreement do not envision a "one-shot affair" like

the sale of a single item to an out-of-state buyer.  *Boschetto v. Hansing*, 539 F.3d

1011, 1017 (9th Cir. 2008) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257,

1265 (6th Cir. 1996)).  Rather, the terms create continuing obligations between

defendant and a resident of the forum.  *Yahoo! Inc.*, 433 F.3d at 1129.

Specifically, the 1997 Agreement provides that Cornucopia "will not object

to the use and registration of MOXIE-formative marks by [Moxie Java] which are

in compliance with" the contract terms, and that Moxie Java would not "use

MOXIE by itself or in combination with any other term to identify any kind of

prepared beverage in a pre-packaged or pre-sealed container." (1997 Agreement.)

Indeed, the ongoing nature of the parties' obligations is evinced by Cornucopia's

June 2007 demand letter, which provided:

> We are aware of the 1997 agreement between The
> Monarch Company Inc. and [Moxie Java International
> ("MJI")] . . . .  [I]n our view, the Agreement does not
> permit MJI to use any other MOXIE-formative marks
> and further restricts MJI's use of MOXIE JAVA to the
> restaurant services and goods described in paragraphs
> 1&2 of the Agreement. . . .
> Clearly, your client's applications for registration
> of MOXIBERRY, MOXICCINO and MOXIE MAT[É]
> violate the terms of the Agreement.

(Demand Letter at p. 2.)[2]

The 1997 Agreement also states that it "shall be deemed a contract made under the laws of the State of Idaho for any and all purposes, and shall be interpreted and enforced in accordance with such laws." (Id. at 3.) Although a choice-of-law provision standing alone is "insufficient to confer jurisdiction," such a provision can "reinforce[] . . . the reasonable foreseeability of possible litigation there." *Burger King*, 471 U.S. at 482. Further, the 1997 Agreement provides that it would "inure to the benefit of and be binding upon the parties hereto, their successors and assigns" and that "[b]y taking an assignment, an assignee shall be deemed to have accepted and agreed to perform all of the obligations of the assignor under this Agreement." (1997 Agreement, pp. 2-3.)

Accordingly, in light of the terms of the 1997 Agreement and Cornucopia's continuing obligations to Moxie Java under that contract, the court finds that Cornucopia purposefully availed itself of the privilege of conducting activities in Idaho.

---

[2] The Court recognizes that "cease-and-desist letters *alone* do not suffice to justify personal jurisdiction," and that "[s]pecifically, such letters cannot satisfy the second prong of the Due Process inquiry." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (italicized emphasis added). However, when coupled with the 1997 Agreement, and considering the language in the letter referencing the 1997 Agreement, the letter supports a finding of continuing obligations between the parties. Moreover, as explained in section IIB below, the 1997 Agreement itself, not the demand letter, satisfies the second prong of the Due Process inquiry.

**Memorandum Decision and Order – 11**

### B.    Relatedness

"[A] single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (citing *Yahoo! Inc.*, 433 F.3d at 1210) (internal quotation marks omitted).  Here, Cornucopia purposefully availed itself of the privilege of conducting activities in Idaho by becoming a party to the 1997 Agreement.  Since Moxie Java alleges that Cornucopia has breached the 1997 Agreement, Moxie Java's cause of action arises from Cornucopia's purposeful contact with the forum.  *See, e.g., Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474, 1480-81 (9th Cir. 1986) (Contract constituted defendant's contacts with forum state for purposes of relatedness element of the limited jurisdiction test.).  Accordingly, the second prong of the specific jurisdiction test is satisfied.

### C.    Reasonableness

Because Moxie Java has satisfied the first two prongs of the test for specific jurisdiction, the burden shifts to Cornucopia "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Menken*, 503 F.3d at 1060 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  To determine the reasonableness of exercising jurisdiction over a

defendant, the court considers the following factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* (*quoting CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)).  Cornucopia contends that the first, second, fourth, and seventh factors establish that the exercise of personal jurisdiction over it would be unreasonable.

As to the first factor, some cases in the Ninth Circuit "have suggested that once the minimum contacts threshold is met the degree of intrusion into the forum becomes irrelevant." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (*citing Corporate Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 787 (9th Cir. 1987)).  Nonetheless, other cases provide that "[e]ven if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness." *Core-Vent Corp.*, 11 F.3d at 1488 (9th Cir. 1993) (*quoting Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)) (alterations in original).

In this case, Cornucopia's contacts with the state of Idaho appear limited to

the 1997 Agreement and isolated communications with Moxie Java regarding its

enforcement.  (1997 Agreement; Demand Letter.)  Cornucopia also provides that it

does not sell any of its products in the state of Idaho (Riddell Decl. 2-3).[3]  Overall,

Cornucopia's contacts with the forum appear attenuated, and therefore this factor

weighs against the reasonableness of exercising personal jurisdiction over

Cornucopia.  Nonetheless, this factor does not "weigh heavily" in Cornucopia's

favor since Cornucopia's contacts "were sufficient to meet the purposeful

availment prong." *Core-Vent Corp.*, 11 F.3d at 1488.

Regarding the second factor, the Court acknowledges that Cornucopia, as a

New Hampshire corporation, would be burdened by litigating this case in Idaho.

However, "with the advances in transportation and telecommunications and the

increasing interstate practice of law, any burden is substantially less than in days

past." *Menken*, 503 F.3d at 1062 (*quoting CE Distrib., LLC v. New Sensor Corp.*,

380 F.3d 1107, 1112 (9th Cir. 2004)).  Indeed, the Ninth Circuit provides that even

---

[3] Moxie Java contends that such products are available for purchase within the state.
However, when a motion to dismiss for lack of personal jurisdiction is based on written materials
rather than an evidentiary hearing, the Court must take Moxie Java's uncontroverted allegations
in the complaint as true and resolve factual disputes in affidavits in its favor.  *Dole Food Co.,
Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).  Accordingly, the Court assumes for purposes
of this motion that Cornucopia does not sell any of its products in the state of Idaho.  The Court
notes that had this issue been more critical to the Court's decision – meaning the Court was
otherwise inclined to grant the motion to dismiss – the Court would have ordered discovery on
this issue.  However, discovery is unnecessary at this point because the Court intends to deny the
motion even under the assumption that Cornucopia does not sell its products in Idaho.

**Memorandum Decision and Order – 14**

where a defendant must travel from a foreign country, "this factor is not

dispositive" as to the reasonableness of exercising personal jurisdiction.  *Dole*

*Food Co., Inc. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002) *(citing Sinatra v.*

*Nat'l Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988)).  Therefore, although this

factor weighs in Cornucopia's favor, the Court does not find it wholly persuasive.

   As to the fourth factor, Cornucopia contends that Idaho has no interest in

adjudicating this dispute.  However, even in a "simple breach of contract claim . . .

Idaho has a strong interest in providing effective redress for its corporate

residents."  *Wachovia Trust Co. v. Amin*, No. 04-625, 2005 WL 1593648, at *6 (D.

Idaho July 7, 2005).  In addition, Idaho's interest is particularly strong since the

1997 Agreement's choice-of-law provision states that the contract is governed by

Idaho law.  *Hotel Ramada of Nev. v. Estate of Cheek*, 716 F. Supp. 473, 477 (D.

Nev. 1989).  Thus, this factor weighs heavily in favor of exercising personal

jurisdiction over Cornucopia.

   Regarding the final reasonableness-factor, the Court agrees with Cornucopia

that an alternative forum exists to adjudicate this dispute, as Moxie Java could

bring this action in New Hampshire.  Therefore, this factor weighs against

exercising personal jurisdiction over Cornucopia.  *See CE Distrib.*, 380 F.3d at

1112.  Like factors one and two, though, this factor carries very little weight.

**Memorandum Decision and Order – 15**

Ultimately, although a few of the foregoing factors marginally favor Cornucopia, the more compelling factor favors Moxie Java.  Thus, the Court concludes that Cornucopia has not presented a "compelling case" that the exercise of personal jurisdiction over it would be unreasonable.  *See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1324 (9th Cir. 1998)* (Although some factors weigh in defendant's favor, defendant failed to present compelling case that the court's exercise of jurisdiction would be unreasonable.).  Indeed, "[t]he only case in which the Supreme Court has held that these factors determined the question of personal jurisdiction was in a suit between two foreign corporations in which the Court divided evenly over whether the minimum contacts were sufficient." *Menken, 503 F.3d at 1063 n.1 (9th Cir. 2007)* (Bybee, J., concurring) (*citing Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 107 (1987)*).  Accordingly, the Court will deny Cornucopia's motion to dismiss for lack of personal jurisdiction.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 14) shall be, and the same is hereby, DENIED.



DATED:  **January 23, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge